IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Timothy L. Ulrick, et al.,

Plaintiffs,

-vs-

Norm Kunz, et al.,

Defendants.

Case No. 3:07 CV 3168

MEMORANDUM OPINION AND ORDER

JUDGE JACK ZOUHARY

## INTRODUCTION

Plaintiff Timothy Ulrick filed his Complaint (Doc. No. 1) in October 2007. Plaintiff sued Defendant Norman Kunz for the intentional torts of assault and battery. Plaintiff sued Defendant Ahal Contracting Co. ("Ahal") for employer intentional tort.

Pending before the Court is Ahal's Motion for Summary Judgment (Doc. No. 55). Plaintiff Timothy Ulrick filed an Opposition (Doc. No. 72), and Ahal replied (Doc. No. 73). (Timothy Ulrick's wife and children are also plaintiffs, bringing claims for loss of consortium, and their claims are dependent on the success of Timothy Ulrick.) For the reasons stated below, Ahal's Motion is granted.

## BACKGROUND

Plaintiff is a journeyman carpenter who was hired by Ahal in June 2006 from a local union hall in Lima, Ohio. Ahal was responsible for concrete work for a new warehouse being constructed in the Lima area. Defendant Norman Kunz was a foreman and labor supervisor for Ahal. Both Plaintiff and Kunz were working at the warehouse site on October 16, 2006.

The events of October 16, 2006 are disputed. Because this is a motion for summary judgment, the Court presumes the accuracy of the following version of events offered by Plaintiff during his deposition:

> I was stripping forms. We hadn't been there that long. I mean, you know, an hour or so isn't that long to me as far as being in one area because, you know, you don't get much done in one hour. You get your tools set up.
>
> [] I think I was stripping on the left side of the form. I'm pulling -- I pulled nails on that one side. You have to pull your nails out. You have to take all of your braces off, and then you've got to -- you know, you can either use a small wrecking bar or a big wrecking bar or your hammers or two-by-fours or whatever it takes to get that form loose.
>
> So I had like a five-foot wrecking bar . . . .
>
> So at one point in time I'm picking up nails, and I was bent over. And I still had the wrecking bar in my hand. I sort of stood up, went to stand up, and as I stood up out of the corner of my eye I seen somebody coming at me, you know, towards my person real fast . . . .
>
> But I stood up when I seen him coming at me. I didn't know what was coming at me or I didn't know who was coming at me. And the person that slammed into me, when he slammed into me he grabbed the wrecking bar. I had both hands on it. He wound up with both hands on it.
>
> There was a struggle. He was trying to struggle to take the bar from me very violently, jerking me . . . . I was jerked and slammed into that building, into the corner of the building.
>
> At one point in time the bar was going up and down. I went to the ground. I tried getting back up, and he was so strong that the force of him pulling back up on the bar and me trying to get back up, as soon as I stood back up he overpowered me, taking the bar from me . . . .
>
> [I]t was Norm. Norm took the bar. He raised it up in the air, and he swung the bar and hit me in the leg with it, right above my knee on my right leg.
>
> And it took my right leg. It threw my right leg out from underneath me. I went down on one knee. I can't remember if he was still pushing on me or whatever, but I tried to get up . . . .
>
> And when I got up into the loading dock Norm -- as far as what he was saying to me, I can't remember what he was saying to me. But he did raise the bar up at one time, and I thought that I was about to be hit again from this wrecking bar. And that was about it . . . .

(Ulrick Dep., pp. 56-60).

Ahal terminated Kunz the day after he allegedly struck Plaintiff with the wrecking bar.

Plaintiff claims Ahal had knowledge of Kunz's violent propensities. Specifically, Plaintiff cites three prior incidents that Ahal was aware of.

First, on June 13, 2005, Kunz threatened a co-worker, Rich Schlossman, and struck Schlossman's hand with his hand (Schlossman Aff.). This was the result of a verbal argument when Schlossman refused to attend a safety meeting after being told to do so by Kunz (*id.*). Ahal gave Kunz a verbal warning.

Second, on February 16, 2006, Kunz had a disagreement with another employee, Ron Stewart, about how to properly fill a heater. At some point during their verbal argument, Kunz believed that Stewart was about to poke him with his hand or finger, so Kunz slapped Stewart's arm away (Doc. No. 72, Ex. 6). Following the incident, Ahal's safety director instructed Kunz not to argue with employees and "[n]ever touch an employee in any form in an aggressive or unwelcome manner" (*id.*). The safety director told Kunz that "if a like or similar incident ever happens again, you will be terminated" (*id.*).

Finally, on September 1, 2006, Larry Sholaw, an Ahal employee, asked Kunz about a disciplinary incident concerning another Ahal employee. Kunz refused to answer Sholaw's questions but Sholaw persisted. A verbal confrontation ensued, and Kunz fired Sholaw and ordered him off the property (Doc. No. 72, Exs. 8 & 9). Sholaw eventually walked away (*id.*). Ahal investigated the incident and found Kunz did not engage in any wrongdoing.

Both parties agree that Kunz had never threatened Plaintiff and, in fact, prior to October 16, 2006, Plaintiff had never had any meaningful interaction with Kunz (Ulrick Dep., p. 34).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Civil Rule 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Federal Civil Rule 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (*citing 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (*quoting Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**EMPLOYER INTENTIONAL TORT**

Like most states, Ohio's workers' compensation laws prevent employees from suing their employer to recover for injuries suffered while on the job. *See* R.C. § 4123.74. However, in *Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St. 2d 608, 614 (1982), the Ohio Supreme Court recognized an exception that allowed employees to recover against their employers where the injuries were caused by an "intentional tort."

In *Fyffe v. Jeno's Inc.*, 59 Ohio St. 3d 115 (1991), the Ohio Supreme Court developed a three-part test for determining an employer's "intent." In order to establish liability for an employer's intentional tort, plaintiff employee must demonstrate:

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge did act to require the employee to continue to perform the dangerous task.

*Id.* at 118.[1]

The first and second elements of the *Fyffe* test are the points of contention in the Motion for Summary Judgment. The two elements are intertwined when employee-on-employee violence is at issue. The critical question is whether Plaintiff has demonstrated that Ahal knew with substantial certainty that exposing Plaintiff to Kunz would result in a physical attack.

The intent hurdle set forth in *Fyffe* is high. The evidentiary proof required is higher than that required to prove negligence and even higher than that required to prove recklessness. *Id.* Plaintiff must show the employer "(1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded." *Jeffers v. Floyd S. Pike Elec. Contractor, Inc.*, 202 F.3d 268, at *3 (6th Cir. 2000) (table).

---

1 The Court is aware the Ohio legislature modified the common law definition by enacting R.C. § 2745.01, which became effective April 7, 2005. The statute heightens a plaintiff's burden of proof with respect to "substantial certainty," requiring a plaintiff to establish "the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." R.C. § 2745.01(A). The new statute "rejects the notion that acting with a belief that injury is substantially certain to occur is analogous to wanton misconduct." *Talik v. Federal Marine Terminals*, 117 Ohio St. 3d 496, 500 (2008).

The Court is also aware that decisions of Ohio appellate courts call the constitutionality of R.C. § 2745.01(A) into question. *See Fleming v. AAS Serv., Inc.*, 177 Ohio App. 3d 778 (Ohio App. 11th Dist. 2008) (finding the statute unconstitutional); *Barry v. A.E. Steel Erectors, Inc.*, No. 90436, 2008 WL 2835245 (Ohio App. 8th Dist. July 24, 2008) (same); *Kaminski v. Metal & Wire Prods. Co.*, 175 Ohio App. 3d 227 (Ohio App. 7th Dist. 2008) (same). Therefore, the Court will apply the common law claim outlined in *Fyffe* as the proper test, as both parties did in their briefs.

Here, Plaintiff has not alleged Ahal desired to injure him. Therefore, the question is whether Plaintiff has offered evidence that Ahal "knew that injury to an employee was certain or substantially certain to result" by keeping Kunz in its employ. *Id.*

The knowledge requirement is "actual knowledge" and must be supported with competent facts. *Thacker v. DaimlerChrysler Corp.*, No. 3:05 CV 7285, 2007 WL 2780561, at *4 (N.D. Ohio Sept. 24, 2007). To be sure, the required intent "limits recovery for employer intentional tort to only egregious cases." *Jeffers*, 202 F.3d at *3. "[T]he mere knowledge and appreciation of a risk -- something short of substantial certainty -- is not intent." *Fyffe*, 59 Ohio St. 3d at 118. It is not enough to show that harm was likely to occur or had a high risk of occurring. *Jeffers*, 202 F.3d at *3. As one Ohio appellate court explained, "an intentional-tort action against an employer is not shown simply because a known risk later blossoms into reality. Rather, the level of risk-exposure must be so egregious as to constitute an intentional wrong." *Arrigo-Klacik v. Germania Singing & Sports Socy.*, No. 00AP-1397, 2001 WL 987811, at *5 (Ohio App. 10th Dist. Aug. 30, 2001).

As the court noted in *Thacker*, "[a] human is not a 'process, procedure, instrumentality, condition, or task.'" Therefore, when applying the *Fyffe* standard to a case of workplace violence by an employee, courts must engage in a highly fact-intensive inquiry. *Thacker*, 2007 WL 2780561 at *4. In light of this, it is helpful to survey cases discussing an employer's liability to its employees for the intentional torts of other employees.

In *Thacker*, an employee brought a gun to the factory where he worked and shot a number of employees before shooting himself. The *Thacker* plaintiff offered evidence that the employer, DaimlerChrysler, knew all of the following:

> [A]n employee at the plant complained to a supervisor about [the shooter's] drug use, threats, and verbal and physical abuse; [the shooter] was warned several times for missing work and poor performance; [the shooter] had been accused of drug use on the job; at least two people, including an employee, reported that [the shooter] was in need of behavioral assistance; [the shooter] falsely accused [two of the victims] of misconduct towards him; [the shooter] had various altercations with supervisors and employees; [the shooter] threatened to "kick [a fellow employee's] ass" in a note shared with supervisors; and [the shooter] had served three years in prison for various offenses before working at Daimler and had been charged for possession of a loaded gun in his vehicle while employed at Daimler.

*Id.* at *6. Relying heavily on this laundry list of evidence, the court denied DaimlerChrysler's motion for summary judgment on plaintiff's employer intentional tort claim.

In *Medlen v. Estate of Meyers*, 476 F. Supp. 2d 797 (N.D. Ohio 2007), *rev'd on jurisdictional grounds*, 273 F. App'x 464 (6th Cir. 2008), the court considered a claim arising from the same incident in *Thacker* but a different victim. The *Medlen* court reached the opposite conclusion of the *Thacker* court, finding plaintiff failed to offer evidence DaimlerChrysler had knowledge with substantial certainty. In that case, however, plaintiff offered far less evidence than the *Thacker* plaintiff. The *Medlen* plaintiff attempted to establish DaimlerChrysler's intent merely by pointing to the shooter's disciplinary record, which was comprised of written warnings for attendance violations and for not ringing in his own time card. The court noted the record was nearly devoid of evidence of the shooter's prior violent behavior, with the exception of plaintiff's evidence that DaimlerChrysler knew of a prior statement the shooter had made to the effect that he "was going to get" plaintiff and others. *Id.* at 802.

In *Weimerskirch v. Coakley*, No. 07 AP-952, 2008 WL 928396 (Ohio App. 10th Dist. Apr. 8, 2008), an assistant manager of a bowling alley sued his employer, AMF, after he was assaulted with a two-by-four by another employee. The trial court granted summary judgment for AMF, finding plaintiff failed to establish AMF had sufficient knowledge of the assaulting employee's violent

tendencies. The court of appeals affirmed, noting that the only evidence of AMF's knowledge was that the assailant had a prior criminal record, which included an assault conviction.

In *Bosse v. Rare Hospitality*, No. C-010760, 2002 WL 1724053 (Ohio App. 1st Dist. July 26, 2002), a restaurant employee brought an action against his employer after another employee threw a knife at him. Plaintiff offered evidence that the employer knew the offending employee was "high strung and stressed" and had engaged in some "verbal altercations" with other employees. The court of appeals held this was insufficient to establish the employer had knowledge that the employee would be violent and that physical harm to another employee was substantially certain to occur. In so holding, the court noted that "[i]f every employee were fired for getting into a verbal altercation, the workplace would be sparsely populated." *Id.* at ¶ 6.

In *Taylor v. Orlando Baking Co.*, No. 83054, 2003 WL 22724710 (Ohio App. 8th Dist. Nov. 20, 2003), an employee punched in the face by a co-employee brought an intentional tort claim against her employer. As evidence of the employer's intent, plaintiff offered affidavits of other employees that the assaulting employee had yelled at co-workers and even threatened to shoot a particular employee "in the head with a nine millimeter." *Id.* at ¶ 14. The appellate court held that the employer lacked the requisite knowledge because the offending employee's prior behavior never included physical altercations. Additionally, the court noted that plaintiff testified "she was never afraid of [the assaulting employee] and never thought of [her] as a threat." *Id.* at ¶ 16.

In *Singleton v. Ohio Concrete Resurfacing, Inc.*, No. 06AP-991, 2007 WL 1219323 (Ohio App. 10th Dist. Apr. 26, 2007), an employee sued his employer after another employee physically attacked him at work. Much like the instant case, in *Singleton*, plaintiff argued that the employer's placement

of the assaulting employee into his work environment, despite knowledge of a volatile disposition, constituted an intentional tort.

As evidence of knowledge with substantial certainty, the *Singleton* plaintiff cited the assaulting employee's criminal record, which included a felonious assault charge, the fact that the employer described the employee as "very hostile," and the employer's knowledge that the employee carried a gun or knife while working. On this evidence, the court of appeals found plaintiff failed to establish an issue of fact as to whether the employer had knowledge with substantial certainty that the employee would injure plaintiff. In reaching its conclusion, the appellate court found the record "devoid of evidence suggesting that [the employer] knew that harm to [plaintiff] was substantially certain. [The assaulting employee] had never physically or verbally threatened [plaintiff], and [plaintiff] had never complained he felt physically threatened by [the employee]." *Id.* at ¶ 38.

With these case applications of employer intentional tort, the Court turns to the evidence at hand. The Court finds the evidence of Ahal's knowledge of Kunz's prior bad acts insufficient to meet the exacting burden required by *Fyffe*.

Certainly it appears Ahal knew Kunz to be a demanding and occasionally confrontational supervisor who was not afraid to use words and physical prowess to intimidate subordinates. Demeanor and verbal altercations in the context of a work environment are insufficient to establish Kunz was a "known danger," and that it was "substantially certain" he would, seemingly unprovoked, assault an employee. As the *Bosse* court noted, something more than prior verbal altercations is required. *Bosse*, 2002 WL 1724053 at ¶ 6.

When it comes down to it, Plaintiff can point to two pieces of evidence of Ahal's prior knowledge of Kunz's potential violent tendencies: (1) the report of the June 13, 2005 incident in which

Kunz hit a subordinate's hand during the course of a work-related dispute; and (2) the report of the February 16, 2006 incident in which Kunz slapped the arm of a subordinate, again during the course of a dispute. The Court finds these two incidents insufficient to establish Ahal knew with **substantial certainty** Kunz was likely to strike an employee with a 20- to 30-pound wrecking bar without provocation.

The two prior incidents both occurred in the context of a dispute with subordinates over their work performance. Both resulted in Kunz allegedly touching or hitting an employee with his hands. There is no evidence that brawls ensued or that Kunz beat the employees; rather Kunz was disciplined for improperly touching employees.

The attack on Plaintiff was markedly different. For one, it appears, according to Plaintiff's testimony, to have been unprovoked. It was not in the context of a work-related disagreement. Second, the attack was considerably more violent than the improper touching reported in the prior two incidents. Kunz used a dangerous weapon and assaulted Plaintiff.

Additionally, there was no existing hostility between Kunz and Plaintiff at the time of the attack. In fact, it is not clear the two had interacted previously at all, let alone had a history of bad blood or disagreements. Although this point is not dispositive, it is relevant when considering the overall picture of this case and whether Ahal knew with substantial certainty Kunz would physically attack Plaintiff.

In summary, given the context of the prior events, the force used in the prior events, and the absence of a relationship between Plaintiff and Kunz, Ahal was not substantially certain Kunz would attack Plaintiff. The evidence offered by Plaintiff is insufficient to establish Ahal had the requisite

intent. Again, Plaintiff must provide evidence that demonstrates more than a "known risk later blossoms into reality." *Arrigo-Klacik*, 2001 WL 987811 at *5.

## CONCLUSION

Plaintiff has failed to offer evidence that creates a genuine issue of material fact whether Ahal possessed the requisite intent for a claim of employer intentional tort. Therefore, Defendant Ahal's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

January 26, 2009